UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

ULRICO ORLANDO TORRES ROSARIO,

                    Plaintiff,

        -vs-                              **No. 1:14-CV-00191 (MAT)**
                                          **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

─────────────────────────────────

## I.  Introduction

        Represented  by  counsel,  Ulrico  Orlando  Torres  Rosario
("plaintiff")  brings  this  action  pursuant  to  Titles  II  and  XVI  of
the  Social  Security  Act  ("the  Act"),  seeking  review  of  the  final
decision  of  the  Commissioner  of  Social  Security  ("the
Commissioner")  denying  his  applications  for  disability  insurance
benefits  ("DIB")  and  supplemental  security  income  ("SSI").  The
Court  has  jurisdiction  over  this  matter  pursuant  to  42  U.S.C.
§ 405(g).  Presently before the Court are the parties' cross-motions
for  judgment  on  the  pleadings  pursuant  to  Rule 12(c)  of  the  Federal
Rules  of  Civil  Procedure.  For  the  reasons  discussed  below,
plaintiff's  motion  is  granted  to  the  extent  that  this  matter  is
remanded to the Commissioner for further administrative proceedings
consistent  with  this  Decision  and  Order.

## II.  Procedural History

        The  record  reveals  that  in  June  2010,  plaintiff  (d/o/b
April 24, 1971)  applied  for  DIB  and  SSI,  alleging  disability  as  of
April 2005. After his applications were denied, plaintiff requested

a hearing, which was held before administrative law judge William M. Weir ("the ALJ") on February 17, 2012. The ALJ issued an unfavorable decision on October 26, 2012. The Appeals Council denied review of that decision and this timely action followed.

## III. The ALJ's Decision

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2010. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 29, 2005, the alleged onset date. At step two, the ALJ found that plaintiff suffered from "status post remote (1989) back surgery and low back syndrome," impairments which the ALJ considered severe.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except that he could "engage in only occasional twisting, turning, and bending, [and] no overhead reaching." T. 18. At step four, the ALJ found that plaintiff was unable to perform past relevant work. Finally, at step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in

significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.  RFC Finding

Plaintiff contends that the ALJ's RFC finding was unsupported by substantial evidence, arguing that the ALJ selectively adopted limitations opined by Dr. Nikita Dave, the state agency consulting physician. Plaintiff also argues that, as a result of this failure to adopt an RFC consistent with the substantial evidence of record, the ALJ erred in failing to obtain vocational expert testimony which would have been necessary to properly assess whether plaintiff's nonexertional impairments eroded the occupational base of sedentary work, at step five of the sequential evaluation. For the reasons discussed below, the Court agrees.

In a September 2010 consulting internal medicine examination, Dr. Dave noted limitations in plaintiff's lumbar spine range of

motion ("ROM"), tenderness along the lumbar spine, and a positive bilateral straight leg raise ("SLR") test. Plaintiff also exhibited some limitations in the ROM of his upper right extremity. Dr. Dave opined that plaintiff had "moderate limitations for repetitive bending, twisting through the lumbar spine, prolonged sitting or standing, repetitive squatting, crouching, and for repetitive gross motor manipulation through the lower extremities." T. 231. According to Dr. Dave, plaintiff also "appear[ed] to have moderate limitations for gross motor manipulation through the right upper extremity." Id.

The ALJ purported to give Dr. Dave's opinion "significant weight," stating that Dr. Dave's "findings [were] accordingly incorporated into the [RFC] [the ALJ] determined." T. 21. However, as noted above, the only nonexertional limitations incorporated into the ALJ's RFC finding were that plaintiff could "engage in only occasional twisting, turning, and bending, [and] no overhead reaching." T. 18. Therefore, despite his statement to the contrary, the ALJ did not actually incorporate all of Dr. Dave's findings into his RFC determination. Specifically, the ALJ's RFC does not account for Dr. Dave's findings that plaintiff had moderate limitations in prolonged sitting or standing, repetitive squatting, crouching, and repetitive gross motor manipulation through the lower extremities. The ALJ failed to explain why he did not incorporate those limitations into his RFC.

4

Plaintiff's medical record establishes that he suffered a work-related back injury in April 2005. T. 992. MRI imaging of plaintiff's lumbar spine confirmed the presence of disc herniations at L4-L5 and L5-S1, with the latest results indicating "some impression on the thecal sac" in the origin of the right L5 nerve root. T. 269, 314-15, 607. Treatment records covering an approximate seven-year time period, from 2005 through 2012, establish that plaintiff was repeatedly assessed on physical examination with significant lumbar spine ROM limitations, positive SLR tests, muscle spasms, and antalgic gait. See T. 216-18 (noting positive Milgram's test, "which usually confirms pathology either inside or outside the spinal cord sheath"; positive Kemp's test, "which usually confirms fracture, facet syndrome, or disc involvement"; positive SLR test, "which may indicate low back radiculopathy or possibly a lumbar disc lesion"; positive Dejerine sign, "which is usually indicative of a bony closure, a tumor, or a mechanical obstruction from a herniated disc"; positive Braggard's sign, indicating lumbar disc herniation; and positive seated SLR test noting "severe pain"), 221-27, 265, 268-69, 278 (noting lumbar spine ROM limitation of 75 percent and "significant lumbar paraspinal muscle spasm"), 342-43, 395 (noting "severely globally limited" lumbar spine ROM, and positive Minor's sign, Kemp's test, Lindner's sign, Braggard's test, Bowstring's sign, Milgram's test, Bechterew's sign, and SLR tests), 572-73, 629.

The medical record also contains substantial evidence clearly supporting Dr. Dave's finding that plaintiff had limitations in sitting for prolonged periods of time. See T. 215 (plaintiff reported "sharp, constant, and severe" pain that "increase[d] with actions such as negotiating stairs, walking or prolonged sitting/standing/bending"); 221-22 (noting, among other findings, that plaintiff required assistance rising and moving on the examination table, and an "[i]nability to walk/sit/stand/drive for prolonged durations of time without an increase in symptoms"); 226 (examining physical therapist opined that plaintiff could sit, stand, and walk for less than two hours in an eight-hour workday, and would require unscheduled breaks); 274 (noting that plaintiff's pain was "significantly worse with sitting"); 395 (noting positive Minor's sign "when rising from a sitting to a standing position"); 572 (noting that plaintiff "found it once again obviously difficult to mount and dismount the examining table" and his report that he could not "sit or stand for any length of time"); 917 (noting "antalgic gait pattern with decreased time spent on the right lower extremity," "[s]itting posture reveal[ed] the most weight bearing on the left hip/pelvis," and "[t]ransitioning from sit to stand and vice versa . . . were labored and magnified the patient's symptoms as reported"). Plaintiff's own reports and testimony additionally supported Dr. Dave's conclusion that he had limitations with prolonged sitting or standing. See T. 37 (testifying that he could

sit and/or stand for approximately 15 minutes at a time); 173 (reporting that he could not "sit down for more than 10 minutes").

Substantial evidence in the record, therefore, clearly supports Dr. Dave's conclusion that plaintiff had at least moderate limitations in sitting or standing, repetitive squatting, crouching, and repetitive gross motor manipulation through the lower extremities. The ALJ's failure to incorporate the limitations opined by Dr. Dave resulted in an RFC finding which was not supported by substantial evidence. Moreover, the ALJ did not give any explanation as to why these limitations were rejected, instead erroneously stating that he incorporated all of Dr. Dave's findings into his RFC. The ALJ did not point to any other medical source opinion in support of his conclusion that plaintiff did not have these additional nonexertional limitations, and thus it appears that the ALJ impermissibly substituted his own medical judgment for that of Dr. Dave.[1] See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support the ALJ's finding as to [plaintiff]'s ability to perform sedentary work, it

---

[1] The ALJ also gave "significant" weight to the opinions of three physicians who examined plaintiff for purposes of evaluation of his workers compensation claim, finding that these opinions "demonstrate[d] the claimant [could not] return to his past work, which required medium to light exertional capacity." T. 21. All three of these opinions noted significant decreased ROM of plaintiff's lumbar spine and findings generally consistent with those of Dr. Dave. See T. 960-61 (an April 2005 independent medical examination ("IME") from Dr. David Bagnall, which noted decreased ROM of 100 percent of active ROM and 75 percent in "all other planes" of plaintiff's lumbar spine); 992-93 (a June 2005 IME in which Dr. James Egnatchik noted limited ROM of the lumbar spine and positive SLR bilaterally); 984-85 (an October 2006 IME in which Dr. Eugene Gosy noted plaintiff's antalgic gait and ambulation with a cane).

is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion'").

The ALJ's failure to incorporate any limitation regarding prolonged sitting is especially significant given that he assessed plaintiff with an RFC to perform sedentary work. See <u>Beylo v. Astrue</u>, 2012 WL 4491043, *8 (N.D.N.Y. Sept. 28, 2012) ("When the full range of sedentary work might be eroded by limitations on standing and sitting, '[t]he [residual functional capacity] assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.'"); SSR 96-9p, Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work (S.S.A. July 2, 1996) (noting that where sitting and standing restrictions are indicated by the record, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing").

Moreover, as plaintiff points out, it is "especially useful [where significant sitting and standing limitations are found] to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96-9p. Thus, the ALJ's failure to incorporate all of the nonexertional limitations found by Dr. Dave, especially those regarding sitting and standing, resulted in a step five finding which was also unsupported by substantial evidence. Had the ALJ properly

considered those limitations, it would have been necessary to consult a vocational expert at step five in order to determine the extent to which plaintiff's occupational base of sedentary work was eroded.[2] See <u>Bapp v. Bowen</u>, 802 F.3d 601, 603 (2d Cir. 1986) ("Where a claimant's nonexertional impairments significantly diminish [his] ability to work beyond any incapacity caused solely from exertional limitations, and [he] is unable to perform the full range of employment under the grids, a [vocational expert] must be consulted.").

This case is therefore remanded for further administrative proceedings. On remand, the ALJ is directed to consider all of the limitations found by Dr. Dave in determining plaintiff's RFC. Once plaintiff's RFC is determined, a vocational expert should be consulted to "reconsider whether or not, given plaintiff's limitations, [he] is capable of performing work which exists in the national economy." <u>Czuba v. Astrue</u>, 2008 WL 2781546, *4 (W.D.N.Y. July 14, 2008).

**V. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 15) is denied and plaintiff's motion (Doc. 7) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings

---

[2] Sitting limitations

consistent with this Decision and Order.  The Clerk of the Court is
directed to close this case.

   **ALL OF THE ABOVE IS SO ORDERED.**


                                   **S/Michael A. Telesca**
                           HON. MICHAEL A. TELESCA
                           United States District Judge

Dated:     May 4, 2016
           Rochester, New York.